OPINION
{¶ 1} Brenda Arnold is appealing the judgment of the Greene County Common Pleas Court, which granted summary judgment to Muncie Volkswagon (hereinafter "Muncie") on Arnold's claims for breach of the Ohio Consumer Sales Practices Act.
 {¶ 2} During the spring of 2000, Arnold utilized an internet service, Microsoft Car Point, to find car dealers because she was interested in purchasing a new car. As a result of this service, Arnold came into contact with Muncie, a Volkswagon dealer in Muncie, Indiana. Arnold had several conversations with Muncie's representative over the phone and agreed over the phone to certain lease terms for a new 2001 Cabrio. On June 14, 2000, a representative of Muncie drove the vehicle to Arnold's home in Beavercreek, Ohio. Once in Beavercreek, Muncie's representative gave Arnold a test drive of the vehicle. After the test drive, when Muncie was satisfied with the vehicle, she signed the lease agreement in her home. Arnold never engaged in any of the dealings involving this vehicle in Indiana.
 {¶ 3} Subsequently, Arnold brought this suit against Muncie, alleging violations of the Ohio Consumer Sales Practices Act (hereinafter "OCSPA"). Arnold's sole claim against Muncie is that it violated the OCSPA by leasing automobiles in Ohio without obtaining an Ohio license to do so. Muncie moved for summary judgment, and the trial court granted the motion on December 2, 2003. Arnold has filed this appeal of the trial court's grant of summary judgment. In addition to an appellate brief of both parties, the State's Attorney General's office has filed an amicus brief in the matter in support of Arnold's appeal.
 {¶ 4} Arnold's assignments of error are:
 {¶ 5} "[1.] The trial court improperly granted appellee's motion for summary judgment.
 {¶ 6} "[2.] The trial court improperly overruled Appellant-Plaintiff's cross motion for summary judgment.
 {¶ 7} "[3.] The trial court erroneously concluded that indiana law governs appellant-plaintiff's transaction."
Appellant's first assignment of error:
 {¶ 8} Arnold argues that the trial court erred in concluding that the lease transaction occurred in Indiana and therefore that Muncie did not sell or lease new motor vehicles in Ohio and thus did not violate the OCSPA.
 {¶ 9} A contract does not exist until the parties have had a meeting of the minds on the essential terms of the contract and both of the parties have agreed to those terms. Columbus, Hocking Valley ToledoRy. Co. v. Gaffney (1901), 65 Ohio St. 104, 117; Youngstown Buick Co. v.Hayes (Oct. 26, 2000), Mahoning App. No. 98-CA-159. Where parties to an agreement have discussed the terms of the agreement but not yet set them in writing, the parties can be said to have only reached a tentative agreement. State v. Humphries (July 9, 1986), Tuscarawas App. No. 85AP11-088. Even in cases where a deposit has been placed on a vehicle, this cannot be said to have created a valid binding contract.
 {¶ 10} Ohio's Tenth District Court of Appeals addressed a case in which an Ohio car dealership negotiated a tentative price for a shipment of used cars with a car dealership in North Carolina. Bobb Chevrolet,Inc. v. Jack's Used Cars, L.L.C., 148 Ohio App.3d 97, 101,2002-Ohio-1351. The Ohio dealership then shipped the cars to North Carolina. Id. If the cars met with the North Carolina dealership's approval, a representative would sign the purchase agreement, and send the payment to the Ohio dealership. Id. at 98. The court held that the offer to sell the vehicles was not accepted until the vehicles had been inspected in North Carolina. Id. at 101. Therefore, the Tenth District held that the place of contracting was North Carolina. Id.
 {¶ 11} The situation in this case is similar to that in Bobb. Arnold and Muncie negotiated the price and terms on a lease of a new Cabrio vehicle over the phone. Muncie then drove the vehicle to Beavercreek, Ohio. Arnold then test drove the vehicle. After being satisfied with the test drive, Arnold signed the contract to lease the vehicle. Like theBobb case, we do not find that Arnold had accepted the vehicle until after she had test driven the vehicle. This was not a situation in which Arnold was stuck with the vehicle as soon as it arrived. We do not believe that if Arnold had not liked the vehicle when she test drove it that she would have still been forced to purchase the vehicle. In fact, Muncie in its appellate brief states that it has never asserted that Arnold was bound under the contract when it brought the car to her and that she had to "take it or leave it." (Appellee's brief p. 13). Therefore, we cannot agree with Muncie that the contract was entered into between Muncie and Arnold over the telephone prior to the vehicle ever being taken from Indiana. Although the parties had reached an agreement on price and the terms of the lease arrangement, we find that this was merely a tentative agreement subject to Arnold's approval of the vehicle. Therefore, we find that the contract was formed in Ohio when Arnold signed the lease. Therefore, the applicable law to the contract was Ohio law.
 {¶ 12} Additionally, Ohio law would apply to the contract because the lease agreement entered into by Muncie and Arnold stated that the "lease is governed by the law of the state where the lease was signed, * * *." The lease agreement was signed in Arnold's Beavercreek home and as such, per the party's lease agreement, Ohio law would apply.
 {¶ 13} Arnold argues that Muncie violated Ohio's motor vehicle dealer license law, R.C. 4517.02, and in so doing also violated the OCSPA, R.C.1345.01 et seq.
 {¶ 14} R.C. 4517.01(M) defines a motor vehicle leasing dealer as
 {¶ 15} "any person engaged in the business of regularly making available, offering to make available, or arranging for another person to use a motor vehicle pursuant to a bailment, lease, sublease, or other contractual arrangement under which a charge is made for its use at a periodic rate for a term of thirty days or more, and title to the motor vehicle is in and remains in the motor vehicle leasing dealer who originally leases it, irrespective of whether or not the motor vehicle is the subject of a later sublease, and not in the user, but does not mean a manufacturer or its affiliate leasing to its employees or to dealers."
 {¶ 16} Arnold alleges that Muncie violated R.C. 4517.02 (A) by leasing a new vehicle in the State of Ohio without first obtaining an Ohio motor vehicle dealer license. R.C. 4517.02(A)(1) and (3) state:
 {¶ 17} "(A) Except as otherwise provided in this section, no person shall do any of the following:
 {¶ 18} "(1) Engage in the business of displaying or selling at retail new motor vehicles or assume to engage in such business, unless the person is licensed as a new motor vehicle dealer under sections 4517.01 to4517.45 of the Revised Code, or is a salesperson licensed under those sections and employed by a licensed new motor vehicle dealer;
 {¶ 19} "* * *
 {¶ 20} "(3) Engage in the business of regularly making available, offering to make available, or arranging for another person to use a motor vehicle, in the manner described in division (M) of section 4517.01
of the Revised Code, unless the person is licensed as a motor vehicle leasing dealer under sections 4517.01 to 4517.45 of the Revised Code;"
 {¶ 21} A dealer under the OCSPA is defined in the Ohio Administrative Code as "any person engaged in the business of selling, offering for sale or negotiating the sale of five or more motor vehicles during a twelve-month period * * * or leasing any motor vehicles * * *." The Ohio Administrative Code 109:4-3-16(B)(32) and (33) state:
 {¶ 22} "(B) It shall be a deceptive and unfair act or practice for a dealer, manufacturer, advertising association, or advertising group, in connection with the advertisement of sale of a motor vehicle, to:
 {¶ 23} "* * *
 {¶ 24} "(32) Sell, offer for sale, or assist in the sale of more than five motor vehicles in any twelve month period, at retail, without being licensed as a dealer or salesperson pursuant to Chapter 4517 of the Revised Code, or otherwise being licensed pursuant to applicable law;
 {¶ 25} "(33) Lease or assist in the lease of any motor vehicle to a consumer as defined in section 1345.01 of the Revised Code without being licensed as a motor vehicle leasing dealer or salesperson pursuant to Chapter 4517 of the Revised Code, or otherwise being licensed pursuant toapplicable law * * *." (emphasis added.)
 {¶ 26} Arnold and the Ohio Attorney General assert that Muncie violated O.A.C. 109: 4-3-16(B)(32) and (33) because it engaged in a practice of entering the state of Ohio with a vehicle and forming a contract with an Ohio resident to sell or lease a vehicle on at least twelve occasions in the year 2000 without being licensed pursuant to R.C. 4517.
 {¶ 27} Muncie argues that it falls within an exception to the OCSPA, specifically that it was "otherwise licensed pursuant to applicable law," pursuant to the provision in O.A.C. 109:4-3-16(B)(33). Muncie argues that it was licensed under Indiana law, which it argues is the applicable law of this case. As we stated above, we do not agree with Muncie's argument that the contract in this case was formed in Indiana. Rather, we agree with Arnold that the contract was formed when she signed the lease agreement at her home in Beavercreek, Ohio. Therefore, we believe the applicable law was Ohio law.
 {¶ 28} As the attorney general argues in its amicus brief, Indiana regulations on motor vehicle licensing do not qualify as an applicable law exempting Muncie from compliance with Ohio law. Under the interpretation proposed by Muncie, the Indiana legislature or that of any state or country for that matter would have the authority to determine who and what meets the requirements to be licensed to sell or lease motor vehicles to consumers in the state of Ohio. Allowing such authority to be granted to any other state or country runs contrary to Ohio's General Assembly's intent to protect Ohio consumers as demonstrated by its creation of consumer protection laws. We cannot agree that the "unless otherwise licensed" language allows any person licensed by any state or country to lease motor vehicles in the state of Ohio. We cannot find that this was the legislature's intent. Rather, we agree with the Attorney General that such provision applies to individuals licensed under other provisions of the Ohio statute, such as auctioneers, and not individuals licensed by other government entities.
 {¶ 29} Additionally, Muncie briefly argues that a determination that Indiana motor vehicle dealers cannot come into Ohio after having negotiated a sale with an Ohio resident and enter into the lease agreement with that resident and deliver the car without being licensed in Ohio violates the Commerce Clause of the U.S. Constitution. However, under such an argument, Ohio would be prohibited from regulating an out of state insurance company that is selling insurance in Ohio to Ohio residents. We cannot agree that the Ohio legislature is so limited. However, as this case raises unique issues as to interstate commerce, we recommend the Ohio Supreme Court to hear and address the issues raised in this case.
 {¶ 30} Therefore, we find that the contract was entered into in the state of Ohio and is therefore subject to Ohio law, including the OCSPA's provision that Muncie be licensed in Ohio in order to lease or sell motor vehicles in Ohio to Ohio consumers. Arnold's first assignment of error has merit and is sustained.
Appellant's second assignment of error:
 {¶ 31} Arnold argues that the trial court erred in overruling her cross motion for summary judgment. We agree.
 {¶ 32} The parties do not dispute the factual events that occurred between the parties. The only issued that remained for determination were whether the contract was created in Ohio and, if it was, whether under Ohio law, Muncie violated the OCSPA by not being a licensed motor vehicle dealer in Ohio. As we stated in the first assignment of error, we find that Muncie was required by OCSPA to obtain an Ohio license to lease motor vehicles in order to engage in the transaction that it did with Arnold. Therefore, Muncie violated the OCSPA by failing to be so licensed in Ohio. The trial court erred in overruling Arnold's motion for summary judgment when it should have properly entered judgment in her favor, stating that Muncie had violated the OCSPA. Arnold's second assignment of error has merit and is sustained.
Appellant's third assignment of error:
 {¶ 33} Arnold's third assignment of error is rendered moot by this Court's determination of the first two assignments of error.
 {¶ 34} The judgment of the trial court entering summary judgment in favor of Muncie is reversed and the matter is remanded for the court to enter summary judgment in favor of Arnold.
Brogan, P.J. and Fain, J., concur.
(Hon. Frederick N. Young sitting by assignment of the Chief Justice of the Supreme Court of Ohio).